## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER WONG,** § | | |
| **TDCJ No. 02245024,** § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| V. § | | **A-22-CV-416-RP** |
| § | | |
| **BOBBY LUMPKIN, Director,** § | | |
| **Texas Department of Criminal Justice,** § | | |
| **Correctional Institutions Division,** § | | |
| § | | |
| Respondent. § | | |

### ORDER

Before the Court are Petitioner Christopher Wong's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 7), and Petitioner's Response (ECF No. 9). Having reviewed the record and pleadings submitted by the parties, the Court denies Petitioner's federal habeas corpus petition under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

### I. Background

In February 2016, Petitioner was charged by indictment with two counts of aggravated sexual assault of a child, two counts of indecency with a child by contact, and two counts of indecency with a child by exposure. (ECF No. 8-26 at 9-11.) Prior to trial, the State waived the counts of indecency with a child by contact and indecency with a child by exposure. (ECF No. 8-6 at 5.) In January 2019, a jury convicted Petitioner of one count of aggravated sexual assault of a

child and sentenced him to fifteen years imprisonment. *State v. Wong*, No. D-1-DC-15-302712 (167th Dist. Ct., Travis Cnty., Tex. Jan. 18, 2019). (ECF No. 8-26 at 12-14.)

The following is a summary of the factual background for Petitioner's conviction:

At the time of the alleged misconduct, Wong was 24 years old, and Child was eleven years old. . . .

In the months leading up to the night in question, Child was living with her mother, her adult sister, and her infant brother. Child's cousin would sometimes spend the night with the family after finishing work. On those occasions, Cousin would either sleep downstairs on the couch or sleep in Child's room. Prior to the night in question, Mother had been working at a laundromat where she met Wong. Mother allowed Wong, then homeless, to stay inside the laundromat while she worked. When her children came to her work one day, Mother introduced her children to Wong. After the two met, Wong and Sister began dating, and Wong would regularly spend the night at the family's home.

On the night in question, Mother and Sister wanted to go out to eat, but Child wanted to stay home and finish playing a video game with Wong in her bedroom. Mother agreed to allow Child to stay with Wong while the rest of the family went out to eat. After Mother, Sister, and Brother left, Cousin arrived at the home after finishing her work shift. When she arrived, Cousin did not think anyone was home because no one was downstairs, and she headed upstairs toward the bedrooms and heard a female's voice. After hearing that, Cousin peaked into Child's bedroom, realized that Child was the person whose voice she heard, saw Wong's naked butt moving up and down while he was on top of Child, and saw one of Child's legs wrapped around Wong's leg. At trial, Cousin testified that it appeared as though Wong was having sex with Child.

After seeing Wong and Child in the bedroom, Cousin repeatedly called Mother and Sister on their cell phones and told them to come home. When Mother and Sister returned home, Cousin told Mother what she saw. Upon hearing this, Mother became upset, did not want to believe that it happened, and asked Child and Wong what happened. Both Child and Wong denied that anything happened, and Mother told Wong to leave the house. After Wong left, Mother took Child to the hospital. Mother testified that she told the treating medical personnel that she was worried that Child had been assaulted, but Child testified that she did not tell the hospital personnel what happened. At trial, Child related that a doctor examined her vagina and said that everything was fine, and Mother explained that the hospital personnel stated that Child's vagina was irritated but that nothing had been forced inside her vagina.

Later the next day, Mother asked Child again if something happened, and Child stated that Wong kissed her on her neck, that he "forced his thing in" her, that she "tried to tell him to stop," that he "wouldn't stop," and that he told her that he would hurt Mother and her if Child told anyone. After Child told Mother what happened, Mother called the police. When the police arrived, they questioned Child and then transported her and Mother to the hospital so that a sexual-assault-forensic exam could be performed.

During the exam, Child informed the sexual-assault-nurse examiner that Wong "put his thing inside of me, and it hurt. While he was inside me, he tried to kiss my lips and my neck." Further, Child pointed to her genitals when asked to clarify what she meant by Wong's "thing" and told the nurse examiner that it felt like she "popped [her] cherry." In addition, the nurse examiner found that there was a transection or laceration to Child's hymen and explained that although she could not state what caused the transection, the injury was consistent with Child's description of what occurred the previous night. The nurse examiner did not see any trauma to Child's vagina, perineum, or anus. When discussing Child's first visit to the hospital, the nurse examiner testified that the records indicated that Child did not make an outcry of sexual abuse and instead complained about itchiness on her vagina. Additionally, the nurse examiner obtained swabs from Child's neck and other body parts. Testing performed on the swab from Child's neck revealed the presence of male DNA, showed the presence of a mixture of DNA from three people, did not exclude Wong as a potential contributor, and established that it was "135 trillion times more likely that the DNA came from [Child], ... Wong, and one unknown individual than if the DNA came from [Child] and two unrelated unknown individuals."

When the exam was over, Mother and Child went home, and Mother called Wong on the phone and placed the call on speakerphone so that Child could hear and participate in the conversation. During the phone call, Wong repeatedly said that he was sorry and "didn't mean to do it."

At trial, Child testified that Wong touched her leg on the night in question after Mother and Sister left the house, that her clothes were removed, that he got on top of her, that his penis touched her vagina, and that he was moving while he was on top of her. Further, although Child explained that she was not paying attention when asked if Wong's penis went inside her vagina, Child testified that Wong's actions were physically hurting her vagina, that she had never experienced anything like that before, that "the sex" is what caused her to feel pain, that sex involves body parts from a man and a woman, and that what happened was rape.

In his case in chief, Wong called Dr. Carrie Edwards to the stand. Dr. Edwards testified that the sexual-assault-exam records showed that there was a complete transection of Child's hymen likely caused by blunt force trauma. However, she also stated that she would expect to see scabs, "redness, swelling, and bleeding" if

3

> the injury occurred at the time described by Child but that her review of the medical records did not show the presence of those types of trauma. Moreover, she related that she observed the presence of scar tissue in the photos taken during the forensic exam and described the injury as old and going through the healing process. Further, Dr. Edwards noted that the records from the first hospital trip indicated that a full examination of Child's genitals was performed but did not list any trauma other than redness, which a bacterial or yeast infection could have caused. Dr. Edwards opined that if a complete transection had occurred just before the first hospital examination, she would expect there to be entries in the record concerning trauma to the genitals. Finally, Dr. Edwards testified that based on her review of the records and the injury, it was very unlikely that the complete transection occurred during the alleged assault and that she was "99.99 percent confident that [the injury to Child's hymen] did not occur during that time frame."
>
> After considering the evidence presented at trial, the jury found Wong guilty of the second count pertaining to contact with Child's sexual organ. . . .

*Wong v. State*, No. 03-19-00211-CR, 2020 WL 1482457 at *1-2 (Tex. App.—Austin, Mar. 27, 2020, pet. ref'd).

Petitioner's conviction was affirmed on direct appeal. *Id.* Petitioner thereafter filed a pro se petition for discretionary review (PDR), which the Texas Court of Criminal Appeals (TCCA) refused on July 22, 2020. *Wong v. State*, No. PD-0403-20 (Tex. Crim. App. July 22, 2020).

On September 16, 2021, Petitioner filed a counseled state habeas corpus application, raising the following grounds for relief:

1. Petitioner's right to equal protection rights was violated by the exclusion of male jurors from his jury;

2. Petitioner received ineffective assistance of counsel when counsel failed to object to the State's exclusion of male jurors from Petitioner's jury;

3. Trial counsel provided ineffective assistance of counsel by allowing peremptory challenges to be conducted off the record; and

4. The trial court violated Petitioner's Sixth Amendment right to a public trial by conducting peremptory challenges in private and off the record.

(ECF No. 8-32 at 14-22 to 8-33 at 1-8.) On April 20, 2022, the TCCA denied Petitioner's state habeas application without written order on the findings of the trial court and on the court's independent review of the record. *Ex parte Wong*, No. WR-93,648-01 (Tex. Crim. App. Apr. 20, 2022). (ECF No. 8-24 at 1.)

Petitioner filed his federal habeas petition on May 2, 2022, raising the following two grounds for relief:

1. The state court's decision that Petitioner had not made a sufficient showing of an equal protection violation in the jury selection process was contrary to and involved an unreasonable application of Supreme Court precedent or was based upon an unreasonable determination of the facts in light of the evidence presented.

2. The state court's decision that Petitioner had not made a sufficient showing that he was denied effective assistance of counsel during the jury selection process was contrary to and involved an unreasonable application of Supreme Court precedent or was based upon an unreasonable determination of the facts in light of the evidence presented.

(ECF No. 1.) Respondent Lumpkin answered the petition and Petitioner has filed a response. (ECF Nos. 11, 14.)

## **II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state

proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Gender Bias in Jury Selection (claim 1)

In Petitioner's first claim, he argues his Fourteenth Amendment right to equal protection was violated when the State used its peremptory challenges based on gender to exclude all male

venirepersons from the empaneled jury. Respondent argues this claim is procedurally barred from federal habeas review or, alternatively, is meritless.

The Fourteenth Amendment's Equal Protection Clause forbids prosecutors from challenging potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The Supreme Court has extended its ruling in *Batson* to prohibit gender discrimination in the exercise of peremptory challenges. *J.E.B. v. Alabama*, 511 U.S. 127 (1994). To prevail on a *Batson/J.E.B.* claim, a defendant must first make a prima facie showing that the prosecutor removed a juror on account of gender. If the defendant makes this showing, the burden shifts to the prosecution to give a gender-neutral explanation for the peremptory challenge. At that point, the "court must determine whether the defendant has carried his burden of proving purposeful discrimination." *United States v. Thompson*, 735 F.3d 291, 296 (5th Cir. 2013).

At the end of voir dire, the jury empaneled for Petitioner's trial was comprised of all female jurors. Petitioner's trial counsel did not object to the jury, concluding "[b]oth the State and Defense used our peremptory challenges on various male members of the panel. Accordingly, I did not believe that a *Batson* challenge alleging gender discrimination was necessary nor appropriate." As Respondent points out, the Fifth Circuit "repeatedly ha[s] held that as a matter of federal law, a contemporaneous objection is a necessary element of a *Batson* claim." *Ward v. Whitely*, 21 F.3d 1355, 1366 (5th Cir. 1994) (citations omitted); *see also Sawyer v. Johnson*, 116 F.3d 477 (5th Cir. 1997) (unpublished per curiam). Thus, because Petitioner's trial counsel failed to make a *Batson* objection, this claim is procedurally defaulted.

In response, Petitioner argues "it strains credulity to think that a defendant could receive ineffective assistance of counsel due to his lawyer's failure to lodge a proper objection, but that the underlying claim would be forfeited as a result of trial counsel's failure to lodge a proper

objection." Petitioner concludes this leads to "an absurd result." (ECF No. 9 at 5.) The Court disagrees. If the attorney's error in failing to lodge an objection was deficient performance and prejudicial to the defendant, the defendant could find habeas relief based on a claim of ineffective assistance of counsel. Even assuming for the sake of argument that Petitioner's claim is not procedurally defaulted, the state court was not objectively unreasonable in denying it. The state habeas court made the following findings:

> 5. Applicant's trial counsel . . . submitted an affidavit that this Court finds credible.
>
> 6. The lead prosecuting attorney at trial, Jessica Hyunh Wolfe, submitted an affidavit that this Court finds credible.
>
> 7. After the completion of voir dire, both the defense team and the State completed their peremptory strike lists in private, as is the usual custom in the county. These lists were then submitted to the Court for the jury to be sat.
>
> . . . .
>
> 10. The State used peremptory strikes on both males and females.
>
> 11. The defense used peremptory strikes on both males and females.
>
> 12. Defense Counsel reviewed the Clerk's list, which contained all the combined peremptory strikes and for cause challenges, prior to the seating of the jury.
>
> 13. Defense Counsel noticed that the remaining venire members were female but did not see any indication that the State systematically struck males from the panel.
>
> . . . .
>
> 24. Applicant has failed to prove that the State used its peremptory challenges to exclude men based on gender alone.
>
> 25. Applicant has failed to prove that the jury was unconstitutionally selected and empaneled.

(ECF No. 8-26 at 124-26.)

It is Petitioner's burden to rebut the state court's factual findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner leans heavily on anecdotal evidence that neither the trial judge nor his habeas counsel have tried a case before an all-female jury. He also intimates that it cannot be a coincidence that a case involving sexual assault of a female child was tried before an all-female jury. But anecdotes and innuendos do not constitute clear and convincing evidence. Accordingly, even if this claim were not procedurally defaulted, Petitioner still fails to rebut the state habeas court's factual findings with clear and convincing evidence. As a result, it is denied.

3. Ineffective Assistance of Counsel (claim 2)

In Petitioner's final claim for relief, he argues his trial counsel provided ineffective assistance of counsel when she failed to object to the State's use of its peremptory strikes to exclude all male jurors from the jury.

The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "'doubly deferential'" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

As the Court briefly noted in the prior section, Petitioner's trial counsel responded to these allegations in an affidavit submitted to the State habeas court:

> At the completion of the voir dire process, with the assistance of co-counsel and Mr. Wong, I completed the Defense's Peremptory Strike List. The process of exercising the peremptory challenges was done in private with the Defense team. However, the resulting Defense Peremptory Strike list, along with the State's Peremptory Strike list, was submitted for filing with the District Clerk and was made part of the record.
>
> Prior to the jury being seated, I reviewed the list prepared by the Clerk, which included all the combined peremptory and for cause challenges. Although I did notice that the remaining venire members were all female, I did not see any indication that the State had systematically struck all the males from the panel.

> Both the State and Defense used our peremptory challenges on various male members of the panel. Accordingly, I did not believe that a *Batson* challenge alleging gender discrimination was necessary nor appropriate.
>
> I respectfully disagree with Mr. Wong's assertion that I was ineffective during the voir dire phase of his trial. I zealously and effectively represented Mr. Wong through every phase of his case, and took every possible step to ensure that he received a fair trial at all times.

(ECF No. 8-26 at 129-30.) The state habeas court found Petitioner had "failed to prove that Defense Counsel's failure to challenge the State's peremptory strikes based on gender fell below an objective standard of reasonableness or that he was prejudiced by this failure." (*Id.* at 125.)

Beyond Petitioner's incredulity that he was tried by an all-female jury, he offers no evidence that the State was biased in striking seven male jurors and five female jurors, nor that any objection lodged by Petitioner's trial counsel would have been meritorious. Conclusory allegations are insufficient to raise a cognizable claim of ineffective assistance of counsel, *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007), and "failure to raise meritless objections is not ineffective lawyering. It is the very opposite," *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

Petitioner nonetheless urges the Court to presume prejudice, analogizing the facts of his case to those where there was an actual or constructive denial of counsel, government interference with counsel, or a conflict of interest. *See Strickland*, 466 U.S. at 692. The Court is not persuaded by this analogy, and, even if it were, Petitioner has still failed to show that trial counsel's performance fell beyond the bounds of prevailing professional standards. Finally, Petitioner assumes without proving that an all-female jury would be less defendant-friendly than a jury of men and women in a child sexual assault case. The Court declines to make such an assumption.

Accordingly, because Petitioner has failed to show that the state habeas court's application of *Strickland* to this claim was unreasonable, it is denied.

### **IV. Certificate of Appealability**

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court denies a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **DENIED**.

It is finally **ORDERED** that a certificate of appealability is **DENIED**.

SIGNED this 16th day of May, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE